RENDERED: JANUARY 30, 2026; 10:00 A.M.
TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2025-CA-0069-MR

JERALD JENNINGS
APPELLANT


APPEAL FROM MCCRACKEN CIRCUIT COURT
v.  HONORABLE JOSEPH ROARK, JUDGE
ACTION NO. 24-CR-00431


COMMONWEALTH OF KENTUCKY
APPELLEE


OPINION
AFFIRMING

** ** ** ** **

BEFORE: THOMPSON, CHIEF JUDGE; EASTON AND L. JONES, JUDGES.

JONES, L., JUDGE: Pursuant to his conditional guilty plea, Jerald Jennings (Jennings) challenges the jurisdiction of the McCracken Circuit Court over a charge of theft by unlawful taking. We affirm.

Cynthia Erickson, a resident of McCracken County, Kentucky, named the Department of Revenue as the payee on two checks drawn on her account at Paducah Bank. It is uncontested that Paducah Bank is a financial

institution located in McCracken County, Kentucky. The total value of the two checks was $45,000.00. Erickson mailed the checks to the Department of Revenue's office in Jackson, Mississippi.

According to postal service tracking, the checks arrived in, and then soon departed, a postal facility in Evansville, Indiana. The checks were intercepted at some unknown point between Evansville and their final destination. Ultimately, someone altered the checks to make Jennings the payee and they were deposited into Jennings' bank account in Mississippi. A McCracken Circuit Court Grand Jury indicted Jennings for one count of theft by unlawful taking, more than $10,000.00 but less than $1,000,000.00. *See* Kentucky Revised Statutes (KRS) 514.030(2)(g).

Jennings filed a motion to dismiss for lack of jurisdiction, arguing Kentucky courts had no jurisdiction over the charge because there was no proof any criminal activity occurred in Kentucky. The Commonwealth argued Kentucky courts had jurisdiction because the theft resulted in a Kentucky resident having her funds from a Kentucky financial institution improperly diverted. The trial court agreed with the Commonwealth and held that "[t]he ultimate harm of the theft resulted in McCracken County. This is clearly an element of the crime." Trial Court Record (R.) at 48.

Jennings then entered a conditional guilty plea, reserving the right to challenge on appeal the trial court's denial of his motion to dismiss for lack of jurisdiction. After the trial court sentenced Jennings to six years' imprisonment as per the terms of the plea agreement, he filed this appeal.

"There is no question but that the court must have jurisdiction over the subject matter of an offense and of the person of the defendant as prerequisites for presiding over the case." *Commonwealth v. Cheeks*, 698 S.W.2d 832, 834 (Ky. 1985). Kentucky courts have jurisdiction over "the commission of a statutory offense in Kentucky . . . ." *Id.* Indeed, "[t]he circuit courts of this state are never without 'jurisdiction' to preside over the prosecution of offenses committed in Kentucky[.]" *Id.* at 835. The commission of a criminal offense in Kentucky provides Kentucky courts with subject matter jurisdiction to prosecute the offense and personal jurisdiction to prosecute the individual charged with the offense. *See Bedell v. Commonwealth*, 870 S.W.2d 779, 781 (Ky. 1993), *as modified on denial of reh'g* (Jan. 31, 1994). In short, though Jennings argues prosecuting him in Kentucky violates his constitutional rights, "[i]f Kentucky has jurisdiction, there is no violation of the Due Process Clause." *Cleveland v. Commonwealth*, 173 S.W.3d 626, 627 (Ky. App. 2005). We review the jurisdictional issue *de novo*. *Id.* at 626.

There is longstanding precedent establishing when Kentucky courts may have jurisdiction over offenses committed outside the territorial limits of this state. For example, Kentucky's highest court held that Kentucky courts had jurisdiction over a murder charge against a person who remained in Virginia while the killing occurred in Kentucky, when that person orchestrated the offense. *Hatfield v. Commonwealth*, 12 S.W. 309, 309-10 (Ky. 1889). In upholding the Kentucky conviction of the Virginia actor, the Court declared:

> It is not pretended that the courts of one state can enforce its laws beyond the state boundary, but it is well settled that, where one puts into operation the force or power that causes the injury, he is responsible where the wrong is perpetrated, although he may not be actually present. If either of the appellants had stood on the Virginia shore, and shot the deceased on the Kentucky side, the offense would have been against the laws of Kentucky.

*Id*. at 310. In short, as a leading treatise on Kentucky law notes, "[s]o long as a criminal act has been committed in Kentucky, jurisdiction over the offense does not depend upon the physical presence of the actor at the time of its commission." 8 KY. PRAC. CRIM. PRAC. & PROC. § 12:83, *Jurisdiction of Sovereign Over Situs of Offense* (6th ed. Nov. 2025).

Over a century ago, albeit in a case involving distinguishable facts and a different procedural posture than the case at hand, the United States Supreme Court also endorsed what is sometimes referred to as the results or effects principle of jurisdiction. Specifically, the Court held that "[a]cts done outside a jurisdiction,

-4-

but intended to produce and producing detrimental effects within it, justify a state in punishing the cause of the harm as if he had been present at the effect, if the state should succeed in getting him within its power." *Strassheim v. Daily*, 221 U.S. 280, 285, 31 S. Ct. 558, 560, 55 L. Ed. 735 (1911). In more modern parlance, "it is clear that a state has the power to legislate so as to give itself criminal jurisdiction over conduct by noncitizens occurring outside the state, which conduct produces harmful results in the state[.]" 1 SUBST. CRIM. L. § 4.4(c)(1), *Based on the Protective Principle* (3d ed. Oct. 2025). *See also, e.g.*, 2 WHARTON'S CRIMINAL LAW § 19:3, *Territorial Jurisdiction* (16th ed. Sep. 2025) ("Thus, the modern rule is that a state may generally prosecute a crime as long as one material element of the crime occurred on its territory. For purposes of establishing territorial jurisdiction, a material element is usually defined as a conduct or result element, but not an attendant circumstance.") (footnotes omitted); 21 AM. JUR. 2D, *Criminal Law* § 434 (Nov. 2025) ("Acts performed outside a state, but intended to produce or actually producing detrimental effects within the state, justify that state in prosecuting the accused as if he or she had been present in the state when committing the offense.") (footnotes omitted).

As it pertains to this case, the General Assembly has essentially codified the results-based jurisdictional principle by enacting KRS 500.060(1)(a), which provides in relevant part:

-5-

> (1) Except as otherwise provided in this section, a person
> may be convicted under the law of this state of an offense
> committed by his own conduct or the conduct of another
> for which he is legally accountable when:
>
> > (a) Either the conduct **or the result which is an
> > element of the offense** occurs within this
> > state[.]

(Emphasis added.)

The gist of the dispute here is whether the result, which is an element of the theft by unlawful taking charge, occurred in Kentucky. The parties have not cited, nor have we independently located, precedent which involves similar facts.

To ascertain if "the result which is an element of the offense" occurred in Kentucky, we must first determine the elements of theft by unlawful taking. Our Supreme Court has held that "[a] person commits theft by unlawful taking over $10,000 when he (1) unlawfully (2) takes or exercises control over movable property of another (3) with the intent to deprive the owner; and (4) the value of the property taken is $10,000 or more." *Fagan v. Commonwealth*, 374 S.W.3d 274, 277 (Ky. 2012).[1]

Unlike cash, for example, the checks at issue had no intrinsic value. After all, without the involvement of a financial institution, a check is just an

---

[1] Under the indictment at hand, the value of the stolen property would also have to be less than $1,000,000.00 but there is no dispute that the checks had a value between $10,000.00 and $1,000,000.00.

autographed piece of rectangular paper. Instead, checks suddenly—and only—acquire true monetary value when taken to a financial institution to be either cashed or deposited into a bank account. This matters because the theft at issue had two discrete stages. First, Jennings obtained the checks themselves without permission. Second, he deposited the funds listed on the checks into his bank account, resulting in the removal of those funds from Erickson's account. Thus, Jennings did not complete the offense (*i.e.*, the unlawful exercise of control over Erickson's property valued over $10,000.00 but less than $1,000,000.00) until he received the monetary value listed on the checks by depositing those funds into his bank account. And until Jennings impermissibly took control over them, Erickson's funds had been on deposit in a Kentucky financial institution.

The result of Jennings' unlawful actions, apparently taken outside the boundaries of Kentucky, was that when depositing the checks intended for another payee into his bank account he was then unlawfully exercising control over Kentucky (specifically McCracken County) resident Erickson's funds which were on deposit in a Kentucky (specifically McCracken County) financial institution. We limit our holding to this unique fact pattern and need not determine whether Kentucky courts would have jurisdiction over charges stemming from extraterritorial thefts of other types of movable property or of checks written by

Kentuckians which were drawn on accounts in financial institutions located outside Kentucky.

Finally, we are not persuaded by Jennings' citation to various provisions of the Uniform Commercial Code (UCC) which have been codified in Kentucky. The only question before us is whether Kentucky courts have jurisdiction over the criminal charge against Jennings, a question which is not addressed by the civil law provisions of the UCC. Nothing within the UCC adds to, or subtracts from, the McCracken Circuit Court's jurisdiction over the criminal charge against Jennings.

Briefly, we perceive that Jennings raises a defense on the merits to the charge under the UCC by insisting that, under the UCC, Erickson had relinquished authority over the checks when she placed them in the mail. Erickson obviously relinquished physical control over the checks when she placed them in the mail. However, it does not logically follow that Erickson lost all legal rights to the checks themselves or the funds denoted on them. She named a specific payee, which was not Jennings. She listed a specific addressee on the mail containing the checks, which was not Jennings. In sum, Jennings points to no evidence whatsoever that Erickson authorized him to possess the checks or to deposit the funds listed thereon into his bank account.

In any event, the only question before us is whether the McCracken Circuit Court had jurisdiction over the charge, not whether Jennings is guilty of that charge. Jennings' guilt was conclusively resolved by his conditional guilty plea. Because nothing within the UCC helps determine whether the McCracken Circuit Court had jurisdiction over the theft by unlawful taking charge against Jennings, we decline to explore the UCC further.

In sum, though there is no concrete evidence that Jennings took any relevant acts within the territorial limits of the Commonwealth of Kentucky, his actions resulted in his unlawful exercise of control over funds belonging to a Kentucky resident from a Kentucky bank with the intent to deprive the Kentucky resident of those funds; thus, satisfying the requirement that the result which is the element of theft by unlawful taking occurred in Kentucky. Consequently, the McCracken Circuit Court properly concluded it had jurisdiction over the theft by unlawful taking charge against Jennings.

We have examined the parties' briefs but have concluded the arguments therein which we have not discussed are without merit or are otherwise unnecessary to resolve the limited jurisdictional issue before us. *Schell v. Young*, 640 S.W.3d 24, 29 n.1 (Ky. App. 2021).

For the foregoing reasons, the McCracken Circuit Court is affirmed.

ALL CONCUR.

BRIEFS FOR APPELLANT:

Christopher B. Thurman
Louisville, Kentucky

BRIEF FOR APPELLEE:

Russell Coleman
Attorney General of Kentucky

James Havey
Assistant Solicitor General
Frankfort, Kentucky